## Missouri, Kansas & Texas Railway Company of Texas v. J. W. Haltom et al.

### No. 1058.        Decided December 16, 1901.

**1.—Contributory Negligence—Discovered Peril.**

The issue of liability in spite of contributory negligence, by reason of discovery of the injured person's peril, was not raised by evidence tending to show merely that employes managing the train saw him upon one of the moving cars before his fall therefrom upon the track by his own negligence had placed him in danger. (Pp. 113-115.)

**2.—Same—Master and Servant.**

The discovery of the dangerous position of one who had, by his own negligence, fallen from and was being dragged underneath moving cars, by an employe of the railway having nothing to do with the moving of the train, did not make defendant company liable for failure to exercise care to avoid injury after discovery of the peril. (P. 115.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Hill County.

Haltom and wife sued the railway company on account of the death of their son, killed by its cars. They had judgment, which was affirmed on appeal by defendant, who then obtained writ of error.

*T. S. Miller* and *Ramsey & Odell,* for plaintiff in error.—In view of the evidence in this case, there was nothing justifying the submission to the jury of the question that the servants and agents of defendant company saw Finley Haltom, after he had fallen under the wheels, in time, by any possible care, to have avoided his being killed.

If it be conceded that the servants and agents of the railway company, or any of them, saw Finley Haltom after he had fallen on the

rail, or under the wheels of appellant's train while it was in motion, there was absolutely no evidence in the record showing, or tending to show, that anything could have been done by the servants of appellant, after discovering his peril, to have prevented injury and death to him. Railway v. Faber, 77 Texas, 153; Railway v. Hall, 33 S. W. Rep., 127.

It appearing from the evidence beyond question that the agents of defendant company were not guilty of any negligence causing the accident, and that they did not discover the peril of deceased in time to have prevented the injury, the court should have instructed a verdict peremptorily for appellant. Railway v. Faber, 77 Texas, 153; Railway v. Hall, 33 S. W. Rep., 127.

*Wear, Morrow & Smithdeal,* for defendants in error.—There was evidence making it necessary to submit to the jury the issue as to whether the employes saw Finley Haltom fall under the wheels of the car which killed him in time to have averted the injury, and whether, by the use of ordinary care, as applied to the circumstances, the injury could have been prevented. Washington v. Railway, 38 S. W. Rep., 764; McCray v. Railway, 34 S. W. Rep., 95; Railway v. Brown, 33 S. W. Rep., 146.

WILLIAMS, Associate Justice.—Defendants in error recovered against the plaintiff in error the judgment of the District Court, which was affirmed by the Court of Civil Appeals, for damages for the death of their son, Finley Haltom, which, they claimed, was caused by servants of plaintiff in error.

Finley Haltom, at the time of his death, was nearly 18 years of age, of average intelligence, and familiar with the movements of trains around depots and the dangers incident thereto. With an elder brother, he had been engaged in unloading coal from cars at the company's yard in Hillsboro, and on the day of his death, had gone with his brother and other boys to the yard for the purpose of getting cars to unload. While waiting for cars of coal to be placed at the chute to be unloaded, he and other boys were about and upon empty cars standing on the track, during which time employes of the company were engaged in switching cars about the yard.

Shortly before the accident, the boys started to go to the coal chute, and in doing so went upon a coal car in a train composed of flat cars and box cars which stood upon one of the tracks. They stopped upon one of the cars several minutes, during which time the switch engine was brought in to the south end of this train of cars and removed one of them and then returned to move the whole train southward. As the engine was coupled to the cars the second time, at some distance from the car upon which the boys were, all of them except Finley alighted from it and walked towards the chute with their backs to the moving train, and did not, according to their testimony, see how the

accident occurred. When they looked back, Finley had fallen from the cars and was across the rail and being dragged by one of the moving cars. According to their testimony, he was dragged seventy or eighty yards before any car passed over his body.

Another witness who was at work a short distance east of the line of cars, states that, after the other boys had left the cars, Finley was seen by him running north on the flat cars, jumping from one to another, until he reached the end of a box car, when he tried to reach around its southeast corner to lay hold of the ladder on its side, and fell between the cars and across the rail. There is nothing in the record to contradict this account of the occurrence. The brother of deceased stated that, as he left the car, he saw Finley walking southward upon it, but the two statements are not in conflict, as there was time for deceased to have turned back and acted as narrated by the other witness.

While the boys, of whom there were four or five, were upon the car, some of them were playing and moving about, throwing pieces of coal and the like. The testimony of some of them is to the effect that they were in plain view of the engineer and that he could have seen them if he looked in their direction. Between them and the engine, but on the ground, was the yard foreman, who, according to their testimony, looked first towards the engineer and then towards them, and gave signals to the former respecting the movements of the train. There was nothing to prevent him from seeing them. Both of these employes testify in effect that they did not see the boys upon the car or know of their presence there.

There is evidence, as before stated, that deceased was dragged for a long distance before the cars passed over his body. The witness before referred to, who saw him fall, was an employe of the railroad company, but had no connection with the switch engine or train. Except this employe, the first servant of the company who saw deceased after his fall was one Pelfrey, a car repairer, unless the evidence justifies the inference that the engineer or yard foreman saw him sooner. Pelfrey saw the body of the boy just as the last car passed over it and at once gave notice to the yard foreman, who signaled the engineer to stop at once. Some of the evidence is addressed to the question whether or not the engineer stopped the train as quickly as possible after receiving the signal; but this question becomes unimportant from the fact that the uncontradicted testimony shows that the whole train had passed over the boy before this notice was given.

The trial court charged the jury, in effect, that although deceased may have been guilty of contributory negligence in his conduct which resulted in his falling under the cars, the defendant would be liable if its servants discovered his peril and failed to use ordinary care to avoid the injury and to save the deceased, and if from such failure his death resulted.

The prominent question now before this court is, whether or not there was evidence to warrant the submission of such an issue, and we think it very clear that there was not. If we concede that the evidence that the boys, while on the car, were in plain view of the yard foreman and the engineer, and that the former repeatedly looked toward them, was sufficient to justify the jury in finding that one or both of these servants then saw them, this furnishes no evidence that either of such employes saw Finley Haltom when he fell, after the other boys had left the car, and the train had changed its position by moving forward, and Haltom had changed his by running back across other cars to the point where he fell; and the principle sought to be applied by the charge could only have application from the time of his fall. It was only then that danger began to which the rule applies. His fall was the occurrence which caused his death. The rule stated presupposes that his contributory negligence helped to cause the fall and precludes his parents from recovering unless the defendant's servants, after discovering the peril brought about by such negligence, failed in their duty. When the servants saw the boys upon the car, if they did so, deceased was not in danger, or at least was not in any such danger as that produced by his subsequent conduct assumed to have been negligent.

The principle under consideration is probably most often applied in cases where persons negligently upon the track are struck by moving engines or cars. In such cases, it is held that it is not the mere discovery of a trespasser upon the track that gives rise to the duty defined in the charge, but it is the discovery or realization of peril to him which has such effect. So, in this case, mere knowledge that boys were on a car of a slowly moving train was not equivalent to knowledge that one of them would negligently run to another part of the train and finally fell under the wheels. To make a case on this theory, there must be affirmative evidence, direct or circumstantial, tending to show knowledge of the fall. There is no such knowledge shown on the part of any employe, except the laborer referred to above. His employment was not such as to make his failure to give notice that of the defendants, as he was not acting for it in operating or controlling the train, but in an entirely different sphere.

As to the contention that the engineer could have stopped the train sooner, it is enough to repeat that the uncontradicted testimony of the other employe, who first learned of the situation, shows that it was then too late for any effort to save the life of the unfortunate boy. Some effort was made in argument, by reference to positions of parties, distances, length and speed of train, and the like, to contradict this statement, but we fail to find in the evidence anything inconsistent with its truth; certainly nothing affording affirmative evidence of the fact which it was incumbent on plaintiff to prove.

The court erred in submitting an issue not presented by the evi-

dence, and for this the judgments of the District Court and of the Court of Civil Appeals will be reversed and the cause remanded. It becomes unnecessary to consider whether or not the charge upon the issue was correct, had the evidence raised it.

*Reversed and remanded.*