### Houston East & West Texas Railway Company v. Summers.

#### No. 799.   Decided May 18, 1899.

**1. Negligence—Defects in Track—Pleading.**

Under a petition alleging a generally defective condition of track at point of derailment, and that "the straps holding said rails together were loose and not properly bolted," evidence that this would permit the rails to get out of line laterally and that they were so was admissible, though the petition had more particularly alleged that the switch rail was bent up at the end so as to be out of line vertically. (Pp. 622, 623.)

**2. Judgment Approved.**

The ruling of the Court of Civil Appeals affirming judgment in this case approved. (P. 623.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Nacogdoches County.

Summers sued the railroad company for personal injuries received by derailment of a train on which he was a passenger. He recovered judgment, from which the company appealed, and on its affirmance obtained writ of error.

*Baker, Botts, Baker & Lovett, J. C. Feagin,* and *Oswald S. Parker,* for plaintiff in error.—When the general allegation of the dilapidated condition of the switch is followed by specific allegations attempting to set out the very character of its defect, the proof should be limited to such specific allegations of defective condition. Railway v. Younger, 29 S. W. Rep., 949; Railway v. Herring, 36 S. W. Rep., 129; Railway v. Vance, 41 S. W. Rep., 168; Railway v. Hennessey, 75 Texas, 157.

*Branch, Garrison & Blount* and *E. W. Smith,* for defendant in error.

WILLIAMS, Associate Justice.—The writ of error was granted under the impression that there was an error in the admission of testimony for which the Court of Civil Appeals should have reversed the judgment. The witness Richardson was allowed to state at the trial that the slide rail of the switch where the train was derailed was about three-eighths of an inch out of line with the rail of the main line, causing a "lip" or lateral projection of one rail beyond the other. Objection to this evidence was urged on the ground that it varied from the petition in that the allegation of the particular defect was "that the rail which meets the rail to make the switch was bent up at the end and was about one and one-half inches higher than the rail that it met." It is unnecessary now to decide whether or not, if this were the only averment descriptive of the condition of the switch, the difference between it and the evidence stated would constitute a fatal variance. It might be conceded that the evidence was not admissible under this allegation, and still we think the other averments in the petition were amply sufficient to let in the proof. Concerning the condition of the switch, the petition contained the following:

"Plaintiff charges that the track and switch at said station of Sterne was in bad condition, repair, and in a dilapidated condition, and that the rails used at said station of Sterne weighed only thirty-five pounds to the yard and were old and badly worn; that the straps holding said rails together were loose and were not properly bolted; that said rails were not properly bolted down, and the ties under said rails were old and in a dilapidated condition; that the switch used at said point was of an old pattern and in a dilapidated condition, and that the stationary rail which meets the rail that —— to make the switch was bent up at the end and was about one and one-half inches higher than the rail that it met."

Other evidence in the case indicated that the effect of the loosening of the straps or rods holding the switch rails together and of the other fastenings would be to give "play" to the rails and allow them to get out of line; and it was therefore proper to show that they were out of line at the time in question, for the purpose, if for no other, of showing that they were not properly confined, and of thus establishing the fact charged in the petition.

The other assignments of error were properly disposed of by the Court of Civil Appeals.